Next case for argument, Baumeister v. Deutsche Lufthansa, Mr. Williams. Good morning, Your Honors, may it please the court, my name is John Williams here on behalf of the plaintiff, H.P. Baumeister. In this case, the plaintiff and Lufthansa had a contract that incorporated EU-261, which is a law of the European Union requiring airlines to compensate passengers. Counsel, my principle question in this case is one your brief didn't address. Let's assume you're right and that Lufthansa has promised by contract to provide the remedy under EU-261. Why doesn't that still mean going to Europe and pursuing the remedy under EU-261? That looks like the holding of Volodarsky, and I don't see why a contract promising to provide this remedy gets you out of it. Well, the way I read Volodarsky is that that was limited to a holding that the remedy in the statute itself is... That's what EU-261 says, that's what we said in Volodarsky. Your argument here is that Lufthansa has promised to abide by EU-261, and we held in Volodarsky that that means going to Europe. I gather... So what's left? I think the distinction is the cause of action. So the cause of action in Volodarsky was a direct action under EU-261, what the plaintiffs had attempted to do. But this is a promise on your view to abide by EU-261, but we still have to ask what it is EU-261 does or requires or is. And Volodarsky says that means going and filing in the national authority in Europe designated to enforce EU-261. That's my problem. I do understand that concern. Our position would be that the cause of action is for breach of contract, which is a cause not cognizable in Illinois. The plaintiff is a U.S. citizen and can bring this action in the United States. When regulation EU-261 refers to a commercial program, why doesn't that mean something like a frequent flyer program that's available to the public in any event? I would answer that by saying that the regulation uses both of those phrases. It uses frequent flyer program and it uses commercial program. Those have distinct meanings. So the argument that this was a commercial program, or excuse me, that a frequent flyer program and a commercial program doesn't recognize the distinction between those terms in the statute. This was, the agreement was called a partner plus agreement, which was a contract between Fraunhofer, our plaintiff's employer, and Lufthansa to provide volume discounts for flights. I think that qualifies under the plain terms of a commercial program. Well, as I understand it, this was not a code sharing flight, but a charter flight. And so I'm having trouble seeing why Article 2.3 rather than Article 2.2 would apply in any event. Lufthansa's condition of carriage draw a distinction between code sharing and charters. Your argument seems to ignore that distinction and treat any flight operated by another carrier as a code sharing flight. I don't know how you square that with the language of Articles 2.2 and 2.3. The reason we make that argument is because code share is defined specifically within the contract. So in the definition section of the conditions of carriage, Lufthansa's conditions of carriage, code share is defined to mean carriage by air, which will be operated by another carrier as indicated in the ticket. So based on that plain definition in the conditions of carriage, this is a code share flight. His ticket, Baumeister's ticket says operated by Augsburg. That is correct. So it's the operating carrier, isn't it? That was the district court's position. I mean it says operated by Augsburg. Also, doesn't it make more sense to have liability fall on the airline that screwed up? So that arises under EU 261 and the question of what is an operating carrier. You're not answering my question. It does not in this case because Lufthansa was the airline that dealt with the passengers on the ground. Yes, I know, but Augsburg is the airline that screwed up, that hurt Baumeister. Why shouldn't it be liable? Why didn't he file a claim with Augsburg after Lufthansa denies his request for a reimbursement? I have the same question. Lufthansa and Augsburg, although they were distinct entities and Augsburg does not exist anymore. It ceased to exist when Lufthansa ended its relationship. But Lufthansa was largely in control of Augsburg. You say largely in control of Augsburg? Yes. What, is it a subsidiary? It is not a subsidiary. What does it mean to control it? We look to the charter agreement that the parties had where it sets out the terms and conditions of their relationship. So for example, Lufthansa could decline approval of flight operations if it deemed there to be a safety program. Excuse me, a safety problem. Lufthansa controlled the standards that their pilots were supposed to operate under. Although the pilots were hired by Augsburg, Lufthansa set the standard that they were to operate under. And Lufthansa actually hired those pilots. There's an exhibit in the record to our response, Exhibit 18, that shows that Lufthansa hired Augsburg's pilots. Lufthansa set the flight plans that's in the Article 5.3 of the parties charter agreement. But getting back to Judge Easterbrook's point, and I understand this to be a concern, is the parties did form a contract. That contract incorporated the terms. And the cause of action is what is dispositive here. The, there's no, if there had been, if there had been a contract for, excuse me, the cause of action is dispositive. And in Volodarsky, the holding was that there's no EU 261 direct cause of action in the United States, simply because the law itself says that the forum is limited. Yes, that's exactly the basis for my question. Your argument is that Lufthansa, by contract, promised to follow EU 261. We now turn to EU 261, and Volodarsky tells us that under EU 261, you make your claim in Europe, right? Why does a promise to incorporate something that requires a claim in Europe change the forum? There's no forum selection clause in the contract. And the, I understand the concern. But again, the contract is a, a breach of contract is a distinct cause of action that can be raised within the United States forum. The contract did not incorporate any forum selection that was, that's in EU 261. So are you saying Baumeister couldn't sue Augsburg? He, I believe he could have at the time. There's, Augsburg existed at that time. The flight was in 2010. Augsburg was an active carrier until 2012. That is correct. 2013. And I also understand that no claim under EU 261 was ever made against Augsburg. That is correct. I think the word bizarre applies to this. Well, and to that point, I would say that what Lufthansa did when the flight was cancelled is, well, it did three things. It actually rebooked Mr. Baumeister on transportation, a different flight. It paid for his train to go to another airport where the substitute flight would leave. It also paid for taxi transportation for him to take between the airports. That, those obligations. For this it is punished. Excuse me? For this it's punished? It's, well, that shows that those are obligations. Shows what? Shows they had certain obligations. They fulfilled them. Now you want to, you want to, you know, hit him for more and, you know. Well. Right, class action. I would, I would turn that on its head though. The, the, the obligations that it carries. What's the class, who is the members of the class? The other people on the flight? The US residents who had flights cancelled under the terms of, who had cancelled flights who flew on, who were supposed to fly on Lufthansa. How many people is that? It is in the thousands, we believe. Pardon? In the thousands. Thousands? Yes. But, again, to your point, Lufthansa has the obligation to rebook the flight under EU 261, they did that. Lufthansa has the obligation to rebook, to, excuse me, to provide transportation between airports when they cancel a flight. They did that and now that they are asked to pay compensation under EU 261, they don't want to do that. All right. And I'll reserve my remaining time. Okay, thank you very much, Mr. Williams. Mr. Bautista? Good morning, Your Honor. If it pleases the court, my name is Anthony Bautista. I represent Lufthansa in this case. First question I'd like to address is whether or not a claim was filed in the European Union with the National Enforcement Board. And the answer to that is yes. Following the transportation- Against Lufthansa, but not against Augsburg. That's correct. And the NEB in Germany decided that there was no case against Lufthansa because Augsburg was the operating carrier. And that happened early in the case, actually before the case was filed in the States. And at that time, it would have been expected that just refile in the NEB against Augsburg and obtain the 600 euros compensation of the EC 261. Just used an initialism that I didn't understand. Sure. Could you use normal words? We're not transportation law specialists. I'm sorry. Which euthanism- CAB. I think it was the NEB. That's the National Enforcement Board under EU 261. EU 261 gives a claimant the opportunity to either file with the National Enforcement Board or in the court in the European Union. And in this case, Baumeister, who was a resident of Germany at the time, did follow up after his transportation and filed- Basically, he filed before an agency rather than a court- Correct. In Germany. Correct. Now, I noticed that you have not invoked rules of preclusion. Is that because German law or EU law doesn't give any preclusive effect to the agency's decision? Well, there's two reasons. One is yes to your question, but we actually did move to dismiss- Actually, it's a compound question, so the answer yes is meaningless. We did not argue issue of preclusion on this appeal. And is that because German law doesn't provide for preclusion or you just dropped the ball? No. We argued it in a motion to dismiss and the district court didn't find issue of preclusion. Didn't find what, I'm sorry? Issue of preclusion. All right. So you argued it in the district court and have not repeated the argument on appeal. That would be a correct statement? Correct, Your Honor. All right. Thank you. Now, moving forward, the European Union has defined an operating carrier. And the operating carrier is defined in EU Regulation 2111 and it defines it as It means an air carrier that performs or intends to perform a flight under a contract of carriage with a passenger or on behalf of another person, legal or natural, having a contract of carriage with that passenger. And that's what took place here. Mr. Baymeister had a contract of carriage with Lufthansa. Lufthansa had a charter agreement with Augsburg. Augsburg operated the flight. Mr. Baymeister received notification that Augsburg was operating the flight when he received his ticket and his itinerary, which clearly stated operated by Augsburg Airways. And under the EU rules, under EC 261, only an operating carrier can be liable to pay compensation to the passenger for any delay or cancellation. Now, there's another section of EC 261, which is the care provision. And the care provision is very similar to the care provisions that are in Lufthansa's contract of carriage, which basically say that if there is a flight delay or a cancellation that Lufthansa, under its contract of carriage, agrees to reroute the passenger, provide accommodations, and provide meals and other incidental requirements a passenger may have associated with a delay in transportation. And Lufthansa has been providing that as part of its conditions of carriage aside from EC 261 regulatory requirements. The, if Baymeister were to prevail against either Augsburg or Lufthansa, is that a, does it have, does he have to prove damages or is there some fixed compensation for his delay and so on? Under EC 261, the damages are fixed based on the length of the flight. So for a long-haul flight, for example, compensation requirements under EC 261 is the equivalent of 600 euros. And they do not have- Which does this fall under? The flight in Germany was obviously less than 1500 kilometers, so it would be 250 euros. But is it tacked because this delayed the connecting flight? So does it come into the 600 euro category because of the delay? It would come under the 250 euro category because it's a short-haul flight. And there is a case reference that says that you don't measure the damage based on the entire transportation, it's based on the sector. Okay. If the court has no other questions. Okay. Thank you, Mr. Battista. Mr. Williams, do you have anything further? Going again to the basic point which Judge Easterbrook raised, I just wanted to refer to the specific language in the contract. The contract says that in the case of a flight cancellation or flight delay, we offer assistance and compensation to the concerned passengers according to the European regulation. So the commitment is to pay compensation. And the reference to European law does not necessarily mean that the forum that the court found involuntary. Do you think the compensation is something other than the 250 euros provided by, I think it's Article 7 of EU 261? No, we do not. I mean, the compensation is set out by EU 261. It's just 261. Yes. Okay. Well, thank you very much to both counsel.